**MOTOWN PRODUCTIONS, INC., Plaintiff,**

v.

**CACOMM, INC., Defendant,**

v.

**MOTOWN RECORD CORPORATION, Motown Productions, Inc. and King World Productions, Inc., Counterclaim Defendants–Appellees,**

**Hedman, Gibson, Costigan & Hoare, P.C., Appellants.**

**No. 780, Docket 87–7917.**

United States Court of Appeals, Second Circuit.

Argued March 28, 1988.

Decided June 20, 1988.

Otto G. Obermaier, New York City (Eric D. Bernstein, Obermaier, Morvillo, Abramowitz & Iason, P.C., Thomas M. Gibson, Philip E. Roux, Hedman, Gibson, Costigan & Hoare, P.C., New York City, of counsel), for appellants.

Marc J. Gottridge, New York City (Corbin Silverman & Sanseverino, New York City, of counsel), for counterclaim defendants-appellees.

Before CARDAMONE and PIERCE, Circuit Judges, and WEXLER, District Judge [*].

PER CURIAM:

Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") requires that sanctions be imposed upon an attorney who advocates a position even though it is "patently clear that [the position] has absolutely no chance of success under the existing precedents, and ... no reasonable argument can be advanced to extend, modify or reverse the law as it stands...." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). In a trademark case, section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), ("Section 35") provides for an award of attorneys' fees to a prevailing party under "exceptional circumstances." Such circumstances exist, for example, where an attorney prosecutes or defends a case in bad faith. *See Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 77 (2d Cir.), *cert denied,* —— U.S. ——, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986).

This appeal raises the question of whether these rules were applied properly to impose sanctions on a law firm attempting to defend the trademark rights of its client. Although we agree with the district court that the position set forth by the sanctioned firm was weak, we cannot hold that the firm's conduct was the kind that was meant to trigger the imposition of Rule 11 or Lanham Act sanctions. Accordingly, we reverse.

## BACKGROUND

### I. *The Parties and Their Use of the Name "Nightlife"*

Motown Productions, Inc. ("Motown") and King World Productions, Inc. produced a television program entitled "Nightlife," a nightly variety/talk show that was hosted by comedian David Brenner (the "Motown Program"). The Motown Program made its premiere appearance on September 8, 1986. Although the Motown Program was eventually cancelled it was, according to the district court, a "slick, network-quality production resembling such well-known programs as 'The Tonight Show' with Johnny Carson and 'Late Night' with David Letterman." *Motown Productions, Inc. v. Cacomm, Inc.,* 668 F.Supp. 285, 290 (S.D. N.Y.1987).

---

[*] Honorable Leonard D. Wexler, Judge of the United States District Court for the Eastern District of New York, sitting by designation.

Prior to the airing of the Motown Program, Cacomm, Inc. ("Cacomm") produced and aired a television program that was also entitled "Nightlife" (the "Cacomm Program"). The Cacomm Program had an interview format and was televised on cable television in New Jersey. Between the date of its initial airing on January 30, 1984 and September 4, 1984, a total of 94 shows were transmitted on the Cable Television Network ("CTN"). In 1985, 75 of Cacomm's shows were transmitted on CTN.

## II. *Proceedings in the District Court*

The action that led to this lawsuit was Motown's receipt of letters asserting Cacomm's alleged exclusive right to the use of the name "Nightlife" and demanding that Motown cease its use of the name. These "cease and desist" letters were authored by a law firm that represented Cacomm prior to the appearance of the law firm whose conduct is at issue here. Thus, the propriety of sending these letters is an issue that is not before us.

Shortly after receipt of the cease and desist letters, and on the eve of the premiere showing of the Motown Program, Motown commenced, by way of order to show cause, a declaratory judgment action in the Southern District of New York. Motown sought a judgment: (1) declaring that Cacomm had no exclusive rights in the name "Nightlife," and (2) enjoining Cacomm from asserting any purported trademark rights in the name "Nightlife" or otherwise interfering with Motown's use of the name in connection with its program.

Motown first presented its order to show cause on Friday, September 5, 1986. Although the district judge originally handling the matter denied Motown the immediate relief sought, the court adjourned the matter only briefly and ordered that the parties appear on Monday, September 8, 1986, before Judge Leisure, the judge to whom the case was assigned. The law firm of Hedman, Gibson, Costigan & Hoare ("Hedman, Gibson" or "the firm") made its first appearance in this lawsuit at that initial conference. There, the firm agreed, on behalf of Cacomm, to the entry of an order prohibiting it from sending additional cease and desist letters or otherwise claiming any exclusive right to the use of the name "Nightlife." Since Hedman, Gibson had thus agreed to the entry of an order that allowed Motown to proceed, unhindered, with its programming schedule, an immediate hearing was unnecessary and the parties proceeded to participate in discovery.

On September 24, 1986 Motown filed an amended complaint and on November 12, 1986 Cacomm filed its answer. In its answer, Cacomm formally asserted its alleged exclusive right to the use of the name "Nightlife" by setting forth counterclaims pursuant to federal and state law. The federal cause of action claimed a violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The state law causes of action alleged unfair competition under the common law of the states of New York and New Jersey. Upon completing discovery, both parties moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. In addition, citing both Rule 11 and Section 35, the parties cross-moved for the imposition of sanctions.

The district court rejected each of Cacomm's claims. Turning first to the Lanham Act claim, the district judge held that applicable standards required that Cacomm prove: (1) that the title "Nightlife" had acquired secondary meaning, and (2) that both parties' use of the title would result in a likelihood of public confusion. *Motown*, 668 F.Supp. at 287–88.

On the issue of secondary meaning, the lower court considered factors stated recently by this court in *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir.1985). Finding that each of these factors militated against Cacomm's position, the court held that Cacomm's use of the title "Nightlife" failed to acquire secondary meaning. *Motown*, 668 F.Supp. at 289.

Turning next to the question of whether there was a likelihood of public confusion, the lower court considered the factors first set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d

Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). Here too, it was found that none of the applicable factors weighed in Cacomm's favor. Accordingly, the court concluded that the public was unlikely to be confused by the simultaneous use of the name at issue and dismissed the Lanham Act and state law claims. *See Motown*, 668 F.Supp. at 292–93.

The district court next considered whether there was merit to Cacomm's claim that Motown improperly filed its registration application with the Patent and Trademark Office. According to Cacomm, the filing of the application was improper because it occurred prior to the use of the mark in commerce. Finding that no such impropriety existed, the lower court dismissed Cacomm's final claim and turned to Motown's request for sanctions under both Rule 11 and the Lanham Act. *Motown*, 668 F.Supp. at 293.

Sanctions were imposed upon Hedman, Gibson on two grounds. First, pursuant to Rule 11, the district court found that Cacomm's claims "had absolutely no chance of success under existing precedents, and no reasonable argument [could be] advanced to extend, modify or reverse" existing precedent. *Motown*, 668 F.Supp. at 293 (citations omitted). Second, the court held that Section 35 provided a separate basis for the imposition of sanctions since Hedman, Gibson's tactics "smack[ed] of bad faith." *Id.* at 294. Pursuant to these findings the court ordered that Cacomm pay $500.00 to Motown and that Hedman, Gibson, without reimbursement from its client, pay $4,500.00 to Motown. Hedman, Gibson now appeals the imposition of sanctions.

## II.

### DISCUSSION

As noted above, the merits of Cacomm's counterclaims are not before us. Thus, while a review of the court's application of the law is necessary to our evaluation of counsels' conduct, we neither affirm, reverse nor modify any of the district court's holdings on the merits of the trademark and unfair competition claims. Rather, we consider the narrow question of whether sanctions were properly imposed pursuant to Rule 11 and/or Section 35. Where, as here, the question raised is whether counsels' pleading was groundless, we are in as good a position as the district court to answer the question. Thus, our scope of review is broad and we need not defer to the opinion of the lower court. *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1288 n. 6 (2d Cir.1986). With this standard of review in mind, we turn to the merits of the appeal.

### A. *Rule 11*

#### i. General Principles

Recent precedents have attempted to outline the circumstances that require a district court to impose Rule 11 sanctions on the signer of a "pleading, motion or other paper." In *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), we discussed the impact of the signer's good faith on the court's decision of whether sanctions should be imposed and concluded that subjective good faith no longer provided the "safe harbor" it did prior to the 1983 amendment of Rule 11. *Id.* at 253. We further held that Rule 11 imposes an "affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Id.*

■ *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), affirmed our commitment to *Eastway*'s holding as to the signer's good faith, noting that removal of that subjective component would reduce the need for satellite litigation arising out of competing claims for the imposition of sanctions. *Oliveri*, 803 F.2d at 1275. *Oliveri* also made clear that Rule 11 applies only to the *signing* of a "pleading, motion or other paper." *Id.* at 1274. Thus, we stressed that the signer's conduct was to be judged as of the time of the signing and that Rule 11 imposes no continuing duty to correct an earlier paper. *Id.* at 1274–75; *see also Stiefvater Real*

*Estate, Inc. v. Hinsdale,* 812 F.2d 805, 809 (2d Cir.1987). While the failure to correct an improper pleading may result in the imposition of sanctions under a separate branch of the court's authority to sanction, such conduct does not require the imposition of Rule 11 sanctions.

The standard of conduct that Rule 11 imposes is set forth in the rule. Specifically, the rule states that a signature serves as a certification that the argument set forth in the paper is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed. R.Civ.P. 11. While the rule also prohibits interposing papers for any improper purpose, it is the above-quoted language with which we are concerned here.

In an effort to elaborate on the rule's language this circuit has cautioned district courts to "avoid hindsight" and "resolve all doubts in favor of the signer." *Oliveri,* 803 F.2d at 1275. Although the imposition of sanctions is mandatory when a claim has absolutely "no chance of success," *Eastway,* 762 F.2d at 254, that mandate is tempered by reminding judges to refrain from imposing sanctions where such action would "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Id.* In sum, this court has sought to further a construction of Rule 11 that allows innovation and zealous representation while punishing "only those who would manipulate the federal court system for ends inimicable to those for which it was created." *Id.*

The standards we have set forth for assessing whether Rule 11 has been violated are stated in general terms and, consequently, are not always easily applied. While all would agree that not every losing argument warrants the imposition of sanctions, the point at which an argument turns from merely "losing" to losing *and* sanctionable is often difficult to discern. Although the case presently before us is close, we hold that the district court erred in holding that the arguments set forth by Hedman, Gibson were losing as well as sanctionable.

ii. Cacomm's Summary Judgment Position

■ To determine whether the imposition of Rule 11 sanctions was appropriate we have examined the papers that set forth the allegedly frivolous arguments made by Hedman, Gibson. Our independent review of the firm's memorandum of law submitted in support of its summary judgment motion convinces us that Hedman, Gibson's approach to the lawsuit was appropriate.

Initially, we point out that although it was found ultimately that Cacomm failed to prove any factor that would tend to show either secondary meaning or the likelihood of confusion, this holding alone cannot support the imposition of sanctions on Hedman, Gibson for maintaining Cacomm's position. Nor, in this court's view, did the documentary and testimonial evidence revealed to Hedman, Gibson through the course of discovery and cited by the district court require that Cacomm abandon its position. While it is true that certain facts revealed during discovery weakened Cacomm's position, those facts did not require Hedman, Gibson to withdraw the counterclaims. Significantly, Hedman, Gibson neither ignored nor misrepresented any factual matter that came to its attention. Instead, the firm acknowledged the facts and argued its position as zealously as possible.

For example, Hedman, Gibson took the approach that the name "Nightlife" was suggestive rather than descriptive. In light of cases holding that titles of magazines may be characterized as suggestive, *see, e.g., C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.,* 753 F.2d 14, 16–17 (2d Cir.1985); *Inc. Publishing Corp. v. Manhattan, Inc.,* 616 F.Supp. 370, 376–77 (S.D.N.Y.1985), *aff'd mem.,* 788 F.2d 3 (2d Cir.1986), this approach was certainly legally justifiable.

Had the district court accepted the firm's characterization of the name, a showing of secondary meaning would have been unnecessary. *See Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 212–13 (2d Cir. 1985); *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979).

Since characterization of a mark as either suggestive or descriptive raises a close legal question, *see McGregor–Doniger*, 599 F.2d at 1131 (boundaries between descriptive and suggestive marks are "not fixed"); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir.1976) ("[h]aving created the category [of suggestive marks] the courts have had great difficulty in defining it"), we cannot say that Hedman, Gibson's position on this issue was, in any way, frivolous.

A similar approach to this litigation is evident from Hedman, Gibson's handling of the likelihood of confusion issue. Here too, certain facts weighed against Hedman, Gibson's argument. The firm's action with respect to these facts, however, was in no way inappropriate. For example, Hedman, Gibson acknowledged that it could show no actual confusion but set forth the legally supportable argument that this fact was not fatal to Cacomm's claim. *See McGregor–Doniger*, 599 F.2d at 1136.

As to the remaining factors and legal principles, Hedman, Gibson did its best to argue the facts as strongly as possible within the framework of existing precedent. The legal standards cited by the firm were proper and, overall, Hedman, Gibson's memorandum displays the firm's familiarity with trademark law. Under these circumstances, we cannot agree with the district court's imposition of Rule 11 sanctions on the ground that the firm's legal arguments were frivolous.

### B. *Lanham Act*

#### i. General Principles

As noted above, the district court held that Section 35 provided an additional basis for an award of sanctions. *See Motown*, 668 F.Supp. at 294. Section 35 authorizes an award of attorneys' fees to the prevailing party under "exceptional" circumstances. *See Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1229 (2d Cir.1987). In this circuit, exceptional circumstances warranting an award of attorneys' fees include cases where the losing party had either prosecuted or defended an action in bad faith.

*Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 77 (2d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). We have also held that section 35 may support an award whether the mark at issue is registered or unregistered. *Centaur*, 830 F.2d at 1229.

■ Although Section 35 fails to state specifically whether the court has the power to require that payment of the fee be made by the attorney rather than the client, it appears that district courts have reached this result, *see, e.g., Viola Sportswear, Inc. v. Mimun*, 574 F.Supp. 619, 621 (E.D.N.Y.1983), and we see no reason to restrict the district court's power to require payment of fees by the party responsible for pursuing the action in bad faith.

■ Contrary to Hedman, Gibson's position, we do not think a construction of the statute requiring payment by an attorney "bends [Section 35] to the breaking point." The statutory language permitting fees to be awarded in "exceptional circumstances" clearly entitles the court to exercise its discretion when taxing such fees. Since the statute is designed, in part, "to afford protection to defendants 'against unfounded suits brought by trademark owners for harassment and the like,'" *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 771 F.2d 521, 524 (D.C.Cir.1985) (quoting legislative history), it seems proper to permit the district court to impose the sanction, in whole or in part, against the attorney when it finds that the improper conduct was caused by the attorney rather than the client. Furthermore, we reject appellant's contention that the availability of other sanctioning tools, such as Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, renders unnecessary our discussion of Section 35 as the basis for a fee award. Each statutory or common law basis for imposing sanctions stands alone and should be examined separately: while the mechanisms may be congruent, they are not necessarily coextensive. We turn then to assess the propriety of the Section 35 award.

ii. Cacomm's Alleged Bad Faith

 The district court held that "the tactics employed by Cacomm's counsel smack[ed] of bad faith." *Motown*, 668 F.Supp. at 294. We disagree. As noted above, we find nothing objectively frivolous about the legal position presented to the court below. Our review of the record also leads us to conclude that the district court's finding as to the firm's subjective bad faith is without support.

From their first appearance in this lawsuit, Hedman, Gibson's conduct was geared toward expediting the proceedings and accommodating the schedule of the court as well as their client's adversary. As noted above, shortly after commencement of the action, the firm entered a stipulation granting Motown the relief necessary to go ahead with its programming schedule. We see nothing in the record to indicate the firm's involvement in any tactics aimed at delaying the litigation and we find no instance where any misrepresentation of fact or law was made to the court or to opposing counsel. In sum, nothing in the record indicates that Hedman, Gibson exceeded the appropriate bounds of zealous representation of its client and engaged in any conduct warranting an award of attorneys' fees for prosecuting a claim in bad faith.

### CONCLUSION

Cacomm's counsel was presented with a difficult case in which it was asked to preserve whatever trademark rights its client possessed. Under the circumstances present here we hold that the firm's conduct was sanctionable neither under Rule 11 nor the Lanham Act. Accordingly, the judgment of the district court is reversed.