**SMART STYLE INDUSTRIES, INC. and H.W. Carter & Sons, Inc., Plaintiffs,**

v.

**PENNSYLVANIA GENERAL INSURANCE COMPANY, Defendant.**

**No. 95 Civ. 10095 (DC).**

United States District Court,
S.D. New York.

Dec. 4, 1996.

Douglas C. Fairhurst, New York City, for Plaintiffs.

Curtis, Zaklukiewicz, Vasile, Devine & McElhenny by Brian W. McElhenny, Merrick, NY, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

On July 10, 1996, I issued an opinion in this insurance coverage case granting in part and denying in part the parties' cross-motions for summary judgment. *Smart Style Industries, Inc. v. Pennsylvania General Ins. Co.*, 930 F.Supp. 159 (S.D.N.Y.1996). I held that plaintiffs Smart Style Industries, Inc. and H.W. Carter & Sons, Inc. ("H.W. Carter") were entitled to be reimbursed for certain attorneys' fees and costs incurred after March 6, 1995 in the underlying action. *See H.W. Carter & Sons, Inc. v. William Carter Co.*, 913 F.Supp. 796 (S.D.N.Y.1996).

Plaintiffs have now submitted affidavits and documentation requesting $561,108 in attorneys' fees, costs and disbursements, and interest. Defendant Pennsylvania General Insurance Company ("Penn General") moves for reconsideration in part of my July 10, 1996 opinion. Alternatively, if its motion for reconsideration is denied, it contends that the amounts requested by plaintiffs are excessive and suggests that the amount of fees and disbursements to be reimbursed be limited to $272,210.19.

## I. *The Motion for Reconsideration*

▇ Penn General seeks reconsideration of that portion of my decision holding that plaintiffs' fees and costs were covered (except for the Lanham Act claim) commencing March 6, 1995. Penn General contends that coverage was not triggered until April 5, 1995, when plaintiffs' general counsel wrote to its agent. I was aware of the April 5th date, however, as I noted in my prior opinion. In my view, the critical date is March 6, 1995, when plaintiffs first gave written notice of the claim to Penn General's agent. At that point, Penn General had notice, through its agent, of a claim on plaintiffs' insurance policy. Although Penn General now states that the March 6th notice "was simply a Notice of Claim" (Def. Mem. In Support of Motion for Reconsideration at 3), that is precisely the point: Penn General was put on notice on or about March 6th of the claim. It certainly could have, and should have, investigated the matter at that time and it could have provid-

ed input into the "defense" of the claim starting then.

Significantly, Penn General has never disputed that the William Carter Company's claim of trademark infringement was in fact covered by plaintiffs' insurance policy. If the William Carter Company had initiated the litigation by commencing an infringement action, there is no doubt that plaintiffs' defense of such an action would have been covered. Here, plaintiffs adopted a more aggressive strategy, and ultimately that strategy worked. To the extent, however, that Penn General was placed at a disadvantage because it was not consulted before plaintiffs adopted this strategy, I have already taken that possibility into account in rejecting plaintiffs' argument that they should be reimbursed for their fees and costs from the outset of the underlying lawsuit.

Penn General cannot now be heard to complain. It was on notice of the lawsuit as early as March 6, 1995 and it was provided additional notice on April 5, 1995. It was provided with copies of all the earlier legal bills and received the later bills as they were sent to the clients. Yet, it never sought to become involved in the decision-making process, it approved the use of Townley & Updike without raising any question about the prior bills, it never sent plaintiffs' then-attorneys a copy of its billing guidelines, and it never objected to the manner in which plaintiffs were litigating the case (except to note its view that certain aspects of the litigation were not covered by the policy).

Under these circumstances, coverage commenced on March 6, 1995. The motion for reconsideration is denied.

## II. *Fees and Costs*

 As detailed in a reply affidavit, plaintiffs seek "damages" in fees, costs, and interest of $561,108, calculated as follows. Plaintiffs were billed a total of $565,552.16, from which is deducted: (i) $44,611.63 for pre-March 7, 1995 fees and costs; (ii) $6,007.65 for post-March 6, 1995 fees and costs attributable to the non-reimbursable Lanham Act claim; (iii) $361 for certain insurance issues; and (iv) $11,587.47 for costs for which plaintiffs have been reimbursed by the William Carter Company (after deducting $5,620.27

billed to plaintiffs for work on the judgment and bill of costs). The balance of $502,984 is the amount plaintiffs now seek as damages, together with interest of $58,125 (calculated at the rate of 9% per annum from the dates of the various statements) for a total of $561,108.

Relying primarily on labor and employment law cases involving statutory attorneys' fees applications, Penn General has made a host of objections and it seeks substantial reductions in the amount of fees and costs reimbursed to plaintiffs. Virtually all of its objections, however, are without merit. I have considered them all, but I will comment briefly on only a few of them.

As plaintiffs point out, I do not have before me an application for a fee award. Rather, this is a breach of contract case: Penn General breached its obligation, which it acknowledged as early as May 1995 (subject to a reservation of rights that never became applicable), to provide or pay for a defense against the William Carter Company's claims. The distinction is important because I am not considering whether plaintiffs are entitled to attorneys' fees as a matter of statutory entitlement. Rather, the analysis is whether plaintiffs' agreement with Townley & Updike was reasonable, whether Townley & Updike's bills reasonably complied with the terms of that agreement, and ultimately what portion of those bills Penn General must pay.

Plaintiffs acknowledge, of course, that they may be reimbursed only for reasonable costs. I find that plaintiffs' agreement with Townley & Updike was reasonable, that Townley & Updike billed in reasonable compliance with that agreement, and that ultimately the amount requested by plaintiffs is reasonable.

Plaintiffs' agreement with Townley & Updike provided for an hourly rate of $330 for James B. Swire, Esq., plaintiffs' lead attorney in the underlying litigation, as well as other senior partners. Penn General contends that the $330 rate is excessive. I disagree, for at least three reasons. First, I had the opportunity to observe Mr. Swire's work both during pretrial proceedings and at trial. In view of the excellent representation that he and his colleagues provided, the hourly rates they charged certainly were rea-

sonable. Second, Mr. Swire has been practicing law for some 30 years and he has extensive experience in the area of trademark law. An hourly rate of $330 per hour is certainly not excessive for someone with his background and credentials practicing in the New York metropolitan area. Finally, Penn General was aware of Townley & Updike's rates as early as May 1995, when it was sent all of the bills to that point. Penn General never objected to the rates or the manner in which plaintiffs were being billed.

Penn General also objects to the number of hours billed by plaintiffs' counsel, complaining, for example, of the attendance of more than one attorney at depositions and the billing of more than eight hours per day during the trial. I find, however, that the number of hours put into the case by plaintiffs' attorneys was not excessive.

The case was an important one for both sides, involving critically important assets—their trademarks. Indeed, in the case of H.W. Carter, the mark "CARTER'S WATCH THE WEAR" was probably its only substantial asset. Hence, much was at stake and the parties certainly could be expected to use their best efforts. The case was also a close one and the William Carter Company was represented by formidable counsel experienced in trademark matters. Indeed, the case was extremely well-tried on both sides.

To obviate the need for a separate preliminary injunction hearing, the case was litigated on an expedited basis. The entire case—from pleadings to trial—was completed in approximately five months. Some 30 depositions were taken, many of which were outside of New York. Discovery issues were litigated. The 130–year histories of two companies had to be researched. A dozen or so witnesses testified at trial and hundreds of exhibits were received into evidence. The post-trial submissions, from both sides, were thorough and detailed. Under these circumstances, the assignment of more than two lawyers by Townley & Updike was reasonable and the number of hours spent on the case as a whole was not excessive.

Penn General also complains that an insufficient deduction ($6,007.65) was made for the non-reimbursable Lanham Act portion of the case. The complaint is rejected. The Lanham Act claim was only a small part of the case, and some of the evidence pertaining to the Lanham Act claim would have been admissible with respect to the other claims in any event. Moreover, I accept Mr. Swire's representation that he deducted the fees and costs incurred by plaintiffs with respect to the Lanham Act claim.

Penn General also raises a number of other objections, which plaintiffs appropriately label "minutiae." I have considered these objections, but I am satisfied that Townley & Updike billed for costs and disbursements in a completely appropriate and reasonable manner.

I do agree with Penn General, however, that interest ought not to be imposed. In fact, plaintiffs paid but a small portion of the bills. Since plaintiffs were not "out-of-pocket" with respect to the bulk of the bills in question, an award of interest is not necessary to make them whole.

### CONCLUSION

For the foregoing reasons, plaintiffs are awarded the sum of $502,984, without prejudgment interest. The Clerk of the Court shall enter judgment in that amount in favor of plaintiffs and against defendant, with costs.

SO ORDERED.