**VIOLA SPORTSWEAR, INC., Plaintiff,**

v.

**Claude Clement MIMUN, Claude Clement, Ltd., CCM Holding Corporation, Men's Sportswear, Inc., United Soneli of America, Ltd., Arnold Apparel Manufacturing Co., Inc., and Paul Raguel, Defendants.**

**No. 82 Civ. 3783.**

United States District Court, E.D. New York.

Nov. 15, 1983.

Netter, Dowd & Alfieri, New York City, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for all defendants other than Arnold Apparel.

Ralph J. Schwarz, Jr., New York City, Gardere & Wynne, Dallas, Tex., for defendant Arnold Apparel.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

An action was commenced in which the plaintiff alleged trademark infringement, deception and unfair competition by the defendants. All of the defendants with the exception of Arnold Apparel Manufacturing Co., Inc. (hereinafter the "moving defendants") moved for summary judgment. The statement attached to the moving papers pursuant to General Rule 9(g) state the material facts, which were not controverted, to be as follows.

The plaintiff entered into an exclusive license with Sasson Jeans, Inc. ("SJI") for the manufacture and sale of children's Sasson jeans in May 1980. On August 26, 1982, a pair of such jeans was allegedly purchased from the moving defendants. Those jeans were part of a group of production samples prepared by Arnold Apparel Manufacturing Co., Inc. for SJI in February 1980. Those jeans were sold by SJI to

Sonelli Sportswear International, Ltd. in early 1980, before the plaintiff obtained the exclusive right to manufacture and sell children's Sasson jeans. Sonelli Sportswear International, Ltd. is the predecessor in interest to United Soneli of America, Ltd., one of the moving defendants. Other than the single sale alleged in the complaint, none of the moving defendants have manufactured, sold, or offered for sale children's Sasson jeans since plaintiff obtained its exclusive license to manufacture and sell such jeans in May 1980. The motion for summary judgment was unopposed and was granted. The moving defendants made application for attorneys' fees. That application is opposed and presents the issue for determination.

A review of the pleadings, affidavits with annexed exhibits, depositions and memoranda of law which fill hundreds of pages also reveal that the jeans in question were worth approximately $10. The action was commenced in the United States District Court in Texas approximately eight days after the jeans were purchased. The complaint (par. 20) charges the defendants with a trademark conspiracy that was nationwide in scope, based entirely on that one pair of jeans. No effort was made by the plaintiff to make any investigation of the facts prior to filing the complaint nor was any effort made to inquire of the moving defendants as to the validity of the charges made in the complaint.

The deposition of James Viola, President of the plaintiff corporation, taken on November 16, 1982, conclusively establishes that the plaintiff had little, if any, information concerning the facts upon which the lawsuit was brought in the name of the corporation. He candidly admitted that he had never reviewed the complaint before it was filed nor did he see any other document (such as the investigator's report, photograph of the allegedly offending jeans) upon which a reasonable person might have formed the belief that the charges in his complaint were valid. (Viola deposition at pp. 51–53). He also candidly stated that he knew only of the single pair of jeans involved in this lawsuit and had no

evidence of a nationwide conspiracy. He also candidly stated that it was possible that the jeans in question might have been manufactured prior to the date the plaintiff became the exclusive licensee for their manufacture (Viola deposition at pp. 100–102, 107). The protestations by the moving defendants that the action was baseless was ignored. The juggernaut of litigation was launched and would not be deterred.

The moving defendants requested the plaintiff to remove the action from Texas to New York. The request was denied, but a motion for that purpose subsequently made in Texas was unopposed. (Par. 8 of Affidavit of Attorney for Moving Defendants dated June 1, 1983). An order of expedited discovery had, in the meantime, been obtained. A whirlwind of legal activity ensured. Depositions were taken in Dallas, Texas, St. Louis, Missouri, and New York. By the time the expedited discovery was completed in November 1982, it was clear beyond cavil, if it had not been before, that the plaintiff's claim was without any basis in fact.

Requests that the action be discontinued were rejected by the plaintiff unless the moving defendants agreed to release the plaintiff from any liability or sanctions to which the plaintiff might be exposed on account of the action it commenced. (See letter of plaintiff's attorney dated April 27, 1983, addressed to the Court). The moving defendants, unwilling to surrender any rights they may have were thus compelled to move for summary judgment which the plaintiff did not oppose and which was granted.

The moving defendants seek counsel fees in the sum of $44,652.36. Such an award may be made, in my view, on any of the following grounds:

1. The concluding sentence in 15 U.S.C. § 1117 reads: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." This was an action brought pursuant to 15 U.S.C. § 1116. The phrase "exceptional circumstances" is not explained but it must surely be con-

strued to encompass a case such as this which was without merit. One can only speculate about the motives which prompted this suit and in doing so none that are laudable come readily to mind.

2. Rule 11 of the Fed.R.Civ.P., as amended effective August 1, 1983, provides that "the signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief *formed after reasonable inquiry* it is well grounded in fact ..., and that it is not interposed ... to harass or to cause ... needless increase in the cost of litigation" (emphasis added). The Rule goes on to provide that its violation may lead to sanctions which may include an order to pay reasonable attorney's fees. As has already been indicated, there is not the slightest suggestion in any paper before the Court that *any* inquiry was made to lend some assurance that the allegations of the complaint were well grounded in fact.

3. Still another ground upon which an attorney's fee may be awarded is 28 U.S.C. § 1927 which provides, in part, that "any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To insist upon the relinquishment of a right as a condition of discontinuing a frivolous claim and then not oppose a motion for summary judgment necessitated thereby is surely to multiply proceedings unreasonably and vexatiously.

Even in the absence of statute and Rule the authority to grant the relief now sought by the moving defendants is incidental to the inherent power of a court over members of its bar. As the Supreme Court put it, this power of the court "is at least as great as its authority over its litigants. If a court may assess counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial process." "Bad faith," the Court observed, "may be found, not only in the actions that led to the lawsuit but also in the conduct of the litigation," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). The charge that the moving defendants were engaged in a nationwide trademark conspiracy based upon the discovery of one pair of jeans worth $10, without more, can hardly be said to be well grounded in fact and can appropriately be characterized as a charge that is frivolous and in support of which a good faith argument on the merits could not be made.

The application for attorneys' fees made by the moving defendants should be granted. The amount to be awarded rests in the discretion of the Court. *See Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 341 F.Supp. 1077, 1083 (D.C.Pa.1972); Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv.L.Rev. 658, 660–661 (1956). Based upon the foregoing and upon all the proceedings herein, the moving defendants are awarded attorneys' fees in the sum of $20,000 to be assessed against the plaintiff and their attorneys jointly and severally. *See U.S. v. Potamkin Cadillac Corp.*, 689 F.2d 379 (2d Cir. 1982) (Potamkin I); 697 F.2d 491 (2d Cir. 1983) (Potamkin II).

So ordered.

### MEMORANDUM AND ORDER

The order of this Court in the above captioned suit dated November 15, 1983 is hereby amended as follows:

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, this Court determines that there is no just reason to delay the appeal from this order and directs that the order be entered as a final judgment.

SO ORDERED.