YESHIVA UNIVERSITY, Plaintiff,

v.

NEW ENGLAND EDUCATIONAL INSTITUTE, INC., Brattleboro Retreat, and Robert C. Guerette, individually and as Director of the Cape Cod Summer Symposia, Defendants.

No. 84 Civ. 3319 (LBS).

United States District Court, S.D. New York.

March 13, 1986.

Berger, Poppe & Janiec, New York City, for plaintiff; Henry T. Berger, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendants; Kenneth N. Hart, C. Evan Stewart, of counsel.

SAND, District Judge.

Defendants, having prevailed after a jury trial in their defense of plaintiff's Lanham Act action, seek an award of attorney's fees of approximately $50,000. for time expended in defending against plaintiff's damage claims. The application presents what appears to be a question of first impression, *i.e.*, is a prevailing defendant entitled to an award of attorney's fees where plaintiff's liability claims were asserted in good faith and raised a substantial question of fact, but plaintiff's damage claims appear to have been grossly exaggerated.

A. *Applicability of the Statute*

Defendants' application proceeds under § 35(a) of the Lanham Act (15 U.S.C. § 1117) which reads:

When a violation of any right of the registerer of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled to [various remedies]. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The threshold question is whether this statutory provision is applicable to an action brought pursuant to the Lanham Act asserting rights to an unregistered mark. A number of courts have concluded that the attorney fee provision may be invoked in a Lanham Act case despite the apparent limitation of § 35(a) to suits based on registered marks.

"... Congress has spoken and clearly intends the recovery of attorney's fees in registered trademark cases. Further, like the other circuits, we can see no reason to distinguish between registered and unregistered trademarks for purposes of attorney's fees. The type of conduct that these damages should deter is unrelated to the type of intellectual property protected. It would be anomalous to provide for attorney's fees in copyright actions, 17 U.S.C. § 106, registered trademark actions, 15 U.S.C. § 1117, and patent actions, 35 U.S.C. § 285, but not in unregistered trademark actions. We do not believe this is what Congress intended.

*Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1026 (9th Cir. 1985).

As the court noted in *Transgo*, "All of the other circuits faced with this issue have reached the same result. See *Metrics & Multistandard Components Corp. v. Metrics Inc.*, 635 F.2d 710, 715–16 (8th Cir.1980) (concluding that section 35 remedies were the exclusive remedies for section 43(a)); *see also Burndy Corp. v. Teledyne Industries, Inc.*, 748 F.2d 767, 771–72 & n. 3 (2d Cir.1984) (assuming without deciding that section 35 remedies applied to section 43(a)); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 608 (2d Cir.1978) (same)."

*Transgo, supra* at 1025–26. *See also Mennen Co. v. Gillette Co.*, 565 F.Supp. 648 (S.D.N.Y.1983); *but see A.S. & W. Prods. Inc. v. Atlantic Steel Co.*, 207 U.S. P.Q. 251 (W.D.N.Y.1979). We find the reasoning of *Transgo* to be persuasive and therefore conclude § 35(a) is applicable to the instant case.

B. *Defendants' Claim that Case is "Exceptional"*

We now turn to the more troublesome and novel question of whether the circum-

stances of this case render it "exceptional" for purposes of a fee award to prevailing defendants. Consideration of this question requires a brief statement of the facts and procedural history of this litigation.

Plaintiff, a non-profit educational institution, has for some time run seminars for mental health professionals (*i.e.*, psychiatrists, psychologists, social workers) on Cape Cod. Since Cape Cod is a favorite summer resort for such professionals, and the calibre of the programs and speakers was high, the seminars were successful and provided a source of revenue for Yeshiva. Although there were some other seminars conducted on Cape Cod appealing generally to the same audience, they did not provide serious competition for Yeshiva. The plaintiff's primary vehicle for advertising and soliciting attendees to its seminars was a printed brochure mailed to mental health professionals.

Defendant New England Educational Institute, Inc. is also a non-profit organization, founded and operated by the co-defendant Robert C. Guerette, a psychiatrist, and his wife.[1] The defendants had run winter seminars for psychiatrists at a Vermont ski resort and then decided to conduct summer seminars for mental health professionals on Cape Cod. In 1984, defendants promoted their "Cape Cod Summer Symposia" by printing and mailing to mental health professionals a brochure that plaintiff claimed was directly and consciously copied from its brochure. Without going into all of the details, suffice it to say that plaintiff's belief that such copying occurred was reasonable and in good faith, despite the fact that the jury reached a different conclusion. Indeed, we do not understand defendants to dispute this point.

The litigation commenced with plaintiff's motion for a preliminary injunction allegedly brought after receipt of telephone calls from mental health professionals evidencing confusion as to the two competing seminars. On the return date of the motion for injunctive relief, defendants consented to an order pursuant to which Dr.

Guerette sent a letter to the 649 mental health professionals who registered for defendants' program offering those registrants the opportunity to transfer their registration to the plaintiff's program; two registrants chose to switch programs. Furthermore, defendants agreed to submit their 1985 brochure to plaintiff prior to its printing and distribution. Defendants complied with this agreement and plaintiff raised no objections to defendants' 1985 brochure, which eliminated many of the features of the 1984 brochure about which plaintiff had originally complained.

This brings us to the nub of defendants' application—the plaintiff's damage claims. At trial, plaintiff called as an expert witness Dr. Richard Netzer, an economist with impressive academic credentials. He first opined that plaintiff sustained compensatory damages in excess of $1,000,000. This analysis was predicated on the assumption that damages sustained by virtue of the defendants' initial brochure would continue unabated for a ten year period despite the letter sent to the 1984 registrants and the substantial revision of the defendants' brochure in 1985 and thereafter. Moreover, his damage theories were based on the assumption that *but for* the allegedly deceptive brochure, defendants would not have been a viable competitor and plaintiff's future profits would have been those of one enjoying an almost monopolistic position in the market.

Defendants moved to strike Dr. Netzer's testimony at its conclusion. Outside the presence of the jury, the Court asked the witness to reconsider whether his testimony was not based on a totally unrealistic appraisal of the continuing impact of defendants' 1984 brochure and whether it did not seek damages arising from *all*, rather than just unlawful, competition.

The next morning, Dr. Netzer stated that he had rethought his analysis and now advanced a new theory based on a diminishing impact of the 1984 brochure. Ultimately, the Court struck all of the witness'

---

**1.** The Brattleboro Retreat was listed as a co-sponsor of defendants' seminars.

testimony except that relating to the two years following dissemination of the brochure. The jury ultimately rejected all of plaintiff's claims finding there to have been no infringement.

Defendants seek attorney's fees only for that portion of their efforts directed to resistance of plaintiff's exaggerated damage claims. They further assert that the suit was brought for purposes of harassment with a view to driving defendants out of the market and restoring plaintiff to its near monopolistic position.

Defendants recognize that defendants are rarely awarded attorney's fees in trademark cases. Moreover, there is no precedent for awarding defendants attorney's fees where the plaintiff's claim on the merits is not only advanced in good faith, but actually presented a close question for the jury. Indeed, it would not have been surprising if the jury had found conscious copying of non-functional attributes of plaintiff's brochure and awarded nominal damages.

Defendants rely on *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521 (D.C.Cir.1985), in which a divided court awarded defendants attorney's fees following an appellate court ruling that the claim of venue in the District of Columbia, although upheld by the district court, was "unreasonable" and contrary to "established law." In *Noxell*, the decision to sue the Bar-B-Que Restaurant and its sole proprietor, a full-time San Francisco firefighter, in the District of Columbia, despite the absence of any office or employees outside the San Francisco area and the limited sales in the District of Columbia, so outraged the majority of the Court that they found the case to be "exceptional" for § 35(a) purposes.

We find the question here a close and difficult one. We are entirely sympathetic to defendants' claim that they were subjected to considerable expense to resist overblown and fanciful damage claims.[2] Yet the genesis of the litigation arises from defendants' use of a brochure which, if it did not reflect conscious copying of non-functional features (as the jury has found), came perilously close to doing so. Moreover, defendants' assertion that the suit was brought for anti-competitive purposes must also be measured in light of the closeness of the conscious copying question and the fact that plaintiff has not complained of other Cape Cod mental health seminars.

What occurred at this trial is the common, albeit regrettable and generally counterproductive, strategy of plaintiffs to get jury damage discussion to begin at an elevated level regardless of the persuasiveness of the asserted large damage claim. Although we do not condone this practice, we do not believe that, under all of the circumstances of this case, an exaggerated damage claim in a case otherwise close on the merits suffices to bring the action into that very rare category of "exceptional cases" in which defendants are awarded fees.[3]

For the reasons set forth herein, defendants' application is denied.

SO ORDERED.

---

**2.** Plaintiff also sought injunctive relief in addition to compensatory and punitive damages. Had plaintiff prevailed on the merits, it would have sought further modification of defendants' procedures (*e.g.*, time and place of conducting the seminars) claimed to have given rise to potential registrants' confusion.

**3.** At oral argument on this application, the Court inquired why defendants, believing that regardless of liability only nominal damages were present, had not offered a judgment pursuant to F.R.Civ.P. 68. Counsel responded that Rule 68 covers only costs which would not, in the context of this case, have included attorney's fees.