OPA (OVERSEAS PUBLISHING ASSOCIATION) AMSTERDAM BV, Harwood Academic Publishers GMBH and Gordon and Breach Science Publishers S.A. Plaintiffs,

v.

**AMERICAN INSTITUTE OF PHYSICS** and American Physical Society, Defendants.

No. 93 CIV. 6656(LBS).

United States District Court, S.D. New York.

Dec. 12, 1997.

---

Orans, Elsen & Lupert, LLP, New York City (Sheldon H. Elsen, Leslie A. Lupert, Robert L. Plotz, of counsel), for Plaintiffs.

Covington & Burling, Washington, DC (Richard A. Meserve, Jeffrey G. Huvelle, Karen W. Kramer, of counsel), for Defendants.

## OPINION

SAND, District Judge.

On August 26, 1997, this Court granted judgment to defendants The American Institute of Physics and The American Physical Society and dismissed plaintiffs Gordon and Breach Publishers S.A., ("G & B") Lanham Act suit. *See OPA Amsterdam BV v. American Inst. of Physics,* 973 F.Supp. 414 (S.D.N.Y.1997). Defendants have now moved for an award of attorneys' fees in the amount of $1,186,403.75 and expenses in the amount of $187,752.67 asserting that this Lanham Act litigation is an "exceptional" case so that the Court "may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). The Second Circuit has made clear that "[s]uch fees should be awarded only 'on evidence of fraud or bad faith.'" *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,* 996 F.2d 1366, 1383 (2d Cir.1993). Defendants assert that their burden of showing bad faith is sustained when one examines not only the lack of merit of plaintiffs' claims but the total context of the dispute in evaluating plaintiffs' behavior.

As one of their defenses, defendants asserted that G & B had unclean hands and "introduced evidence that G & B has engaged in an aggressive corporate practice of challenging any adverse commentary upon its journals, primarily through threatened (and actual) litigation. This evidence persuasively demonstrated that the present suit is but one battle in a 'global campaign by G & B to suppress all adverse comment upon its journals.'" *OPA Amsterdam BV,* 973 F.Supp. at 420. Although the Court found it unnecessary to reach the question whether the evidence of G & B's conduct was sufficient to sustain an unclean hands defense, it set forth "some of the facts on which the defense is based because they provide a useful context for understanding the nature of this controversy and plaintiffs' reaction to criticism of their costs." *Id.* at 420–22.

G & B asserts that the focus of any evaluation of whether a Lanham Act suit is "extraordinary" because it is brought and maintained in bad faith is the action itself. G & B claims that its attacks on the Barschall methodology and defendants' claims based on Barschall's studies can hardly be characterized as frivolous. G & B stresses the evidence disclosing that its threat of litigation to the defendants caused them to withhold distributing a letter timed to coincide with the arrival of subscription renewal notices. This letter made claims that the Barschall study placed defendants' publication "'in the highest ranks of quality and value,'" claims broader than the cost and impact claims elsewhere made for the Barschall study. *Id.* at 418. This Court wrote that:

> A quantitative test of certain cost factors does not necessarily prove the existence of subjective factors such as "value" or "quality". Were defendants now to be asserting that Barschall's methodology proves that their product is superior to that of plaintiffs, serious concerns would be present. But the fact is that the sole material which spoke without qualification of "value" or "quality" was never disseminated and thus, having not been put to promotional use, cannot sustain a finding of a Lanham Act violation.

*Id.* at 426. The Court went on to conclude that there were no grounds for the issuance of an injunction against defendants' making such claims because

Defendants apparently now acknowledge that Barschall's analysis does not demonstrate abstract product superiority or quality. There is no need to enjoin the making of a claim which defendants have never in fact disseminated and do not threaten to disseminate in the future.

*Id.* (citation omitted).

G & B asserts that an action can hardly be said to be "frivolous" or brought in "bad faith" when the Court has found that but for plaintiffs' intervention defendants would have engaged in conduct raising serious Lanham Act concerns.[1]

Defendants respond that the plaintiffs did not know of the text of the 1988 withheld letter until it was produced in discovery in 1995, two years after this action was commenced and that the issue of statements relating to "quality" or "value" were not the main focus of G & B's complaints.

But we conclude that if the inquiry were confined solely to the merits of this litigation, the defendants could not sustain their burden of showing that the suit was extraordinary. Although G & B spent much time and effort seeking to establish matters which this Court concluded were irrelevant (*e.g.*, the reasons why G & B's publications were produced at higher costs) and failed totally to show that defendants' methodology was not sufficiently reliable to establish the results reached, we cannot say that on balance the suit, standing alone, was so totally devoid of merit as to be brought in bad faith.

Defendants also fault plaintiffs for failure to settle the case when the weakness of their claims became apparent. But each side blames the other for not pursuing settlement more affirmatively and this Court concludes that the failure to achieve a settlement was not entirely the responsibility of either party.

We turn then to the critical issue of this motion: whether this Court can find that this suit was brought and maintained in bad faith because it was part of a persistent world wide campaign by G & B to suppress by threats and litigation *any* adverse comment on its costs and pricing practices.

Defendants ask that the Court look beyond the four corners of this litigation and inquire into the plaintiffs' motives in bringing and maintaining this suit. There is indeed precedent in a § 1117(a) context for inquiry as to the plaintiffs' motivation. Thus in *Mennen Co. v. Gillette Co.*, 565 F.Supp. 648, 657 (S.D.N.Y.1983), *aff'd*, 742 F.2d 1437 (2d Cir. 1984), Judge Milton Pollack wrote:

There is a substantial overtone in this case to warrant an inference that the suit was initiated as a competitive ploy. As such it carries necessary damages to the defendant when the plaintiff's claims are found, as they are here, to have no real substance.

Also writing in 1983, Judge Spatt wrote in *Viola Sportswear, Inc. v. Mimun*, 574 F.Supp. 619, 620 (E.D.N.Y.1983):

The phrase 'exceptional circumstances' is not explained but it must surely be construed to encompass a case such as this which was without merit. One can only speculate about the motives which prompted this suit and in doing so none that are laudable come readily to mind.

Citing *Viola* and *Mennen*, Judge Sweet noted in *Universal City Studios, Inc. v. Nintendo Co.*, 615 F.Supp. 838, 864 (S.D.N.Y.1985), *aff'd*, 797 F.2d 70 (2d Cir.1986):

The trademark case alleged by Universal, as recounted above, was motivated for reasons other than a sincere belief in the merits of the underlying claims; and the investigation or lack thereof, that preceded filing the complaint was designed to avoid discovery of the lack of substance of the complaint. These factors establish that the case was exceptional within the meaning of 15 U.S.C. § 1117 both because it was initiated in bad faith and because the suit was designed to serve ulterior business motives.

Significantly, in those cases in which courts awarding fees under § 1117(a) have alluded

---

1. G & B also asserts that it succeeded in causing plaintiffs to concede that they made commercial use of the Barschall study in their promotional material. The stipulation containing this concession was designed to expedite and simplify the trial and the Court attributes little weight to it in this context.

to plaintiff's improper motivation, these references followed the court's conclusion that the suit was totally devoid of merit. Indeed, the circumstances described by the courts in the cases cited above reflected conduct on the part of plaintiffs which would be actionable under Rule 11. We know of no case in which a court has concluded that fees should be awarded although the suit itself was not frivolous because of plaintiff's ulterior motivation in instituting the action.

Defendants urge that this Court act in a manner which will deter G & B from pursuing its alleged practice of seeking to suppress free speech concerning costs and pricing with respect to scientific journals. This Court has already noted its view that "[i]f G & B believes librarians will make more optimal decisions if they consider information other than that provided by defendants, its solution is to augment rather than censor the available truthful information." *OPA Amsterdam BV*, 973 F.Supp. at 428. If G & B institutes further litigation inconsistent with this Court's findings (assuming they survive appellate scrutiny) its good faith in doing so will be examined in that context. But § 1117(a), we conclude, does not warrant an award of fees and expenses where, as here, the suit itself does not meet the standards of bad faith.

Motion denied.

SO ORDERED.