**NEW SENSOR CORPORATION, Plaintiff,**

v.

**CE DISTRIBUTION LLC, Defendant.**

No. 03–CV–4257 (ILG).

United States District Court, E.D. New York.

April 26, 2005.

Sidney R. Bresnick, Cohen, Pontani, Lieberman & Pavane, New York City, for Plaintiff.

David J. Bodney, Peter S. Kozinets, Steptoe & Johnson, LLP, Phoenix, AZ, Jonathan Mark Wagner, Kramer Levin Naftalis & Frankel LLP, New York City, for Defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

## INTRODUCTION

This Court granted summary judgment to defendant CE Distribution LLC ("CE" or "defendant") as to the claims filed against it by plaintiff New Sensor Corporation ("New Sensor" or "plaintiff") for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and New York State trademark laws, N.Y. Gen. Bus. Law § 360–m, in a memorandum and order, familiarity with which is assumed. *New Sensor Corp. v. CE Distribution LLC,* 303 F.Supp.2d 304 (E.D.N.Y.2004). The Second Circuit affirmed this decision in a summary order, familiarity with which is also assumed. *New Sensor Corp. v. CE Distribution LLC,* 121 Fed.Appx. 407 (2d Cir.2004). Pending before the Court is CE's motion for sanctions under 15 U.S.C. § 1117, 28 U.S.C. § 1927 and the inherent power of the Court. Defendant argues that plaintiff's lawsuit and the prosecution of an appeal from this Court's decision summarily dismissing the complaint were frivolous. Plaintiff opposes the motion arguing that it initiated this lawsuit in good faith after it conducted a pre-litigation investigation which supported the allegations in the complaint.

For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

Only the facts necessary for a determination of defendant's motion are restated here. Plaintiff and defendant compete as distributors of vacuum tubes used in electronic equipment. J.S.C. Svetlana ("JSC") is a Russian corporation located in St. Petersburg that manufactures vacuum tubes. In 1992, JSC entered into a joint venture agreement with Svetlana Electron Distributors ("SED"), pursuant to which SED had the exclusive right to distribute JSC vacuum tubes throughout the world except in the countries that comprised the former Soviet Union. Five years later, in 1997, SED registered certain trademarks, including one consisting of a stylized "S" plus the words SVETLANA ELECTRON DEVICES (the "trademark"), with the United States Patent and Trademark Office.

In 2000, when the joint venture between JSC and SED dissolved, JSC entered into an agreement with PM of America, Inc. ("PMA") to distribute its tubes in the United States. In July 2001, New Sensor purchased the trademark from SED. According to New Sensor's President, Michael Matthews ("Matthews"), "as part of the reason for the purchase," he "believed that consumers in the United States associated the SVETLANA mark" with SED, a belief grounded in his fifteen-years of experience in the vacuum tube industry. (Declaration of Michael Matthews executed on March 1, 2005 ("Matthews Decl.") ¶ 3). The tubes that New Sensor currently distributes under the SVETLANA mark are manufactured at Xpo-pul, a factory in Saratov, Russia. New Sensor does not sell tubes manufactured by JSC.

In September 2001, JSC and PMA filed an infringement action against New Sensor and SED in the United States District Court of Alabama alleging that New Sensor did not have rights in the SVETLANA mark. (Matthews Decl. ¶ 4). New Sensor counterclaimed, alleging that the plaintiffs were infringing New Sensor's SVETLANA mark by selling vacuum tubes marked with SVETLANA. In January 2003, the parties resolved the Alabama litigation and entered into a settlement agreement with the following terms: New Sensor had the exclusive rights to the SVETLANA mark; in order to avoid confusion with New Sensor's SVETLANA-brand vacuum tubes, JSC and PMA would not use the SVETLANA name or mark in connection with the promotion or marketing of vacuum tubes, but would use "SED–SPb," [1] the name of JSC's Svetlana factory that manufactured the vacuum tubes; and New Sensor released CE and other customers of JSC and PMA from any claims arising out of the use of the SVETLANA mark in connection with the sale of inventory manufactured by JSC and purchased by CE (and other customers) before March 4, 2003. (Matthews Decl. ¶¶ 5–6). "The purpose of this release was to allow PMA (JSC's ... U.S. distributor) to dispose of SVETLANA-marked tubes already in its inventory at the time of the agreement." (Id. ¶ 6). Following the settlement agreement, PMA sent a letter to its customers, approved by New Sensor, which informed them that tubes formerly branded SVETLANA would now be sold under the Winged–C logo.

In the summer of 2003, CE's website discussed New Sensor's acquisition of the SVETLANA mark and compared New Sensor's SVETLANA vacuum tubes to those sold by CE. (Matthews Decl. ¶ 8). According to Matthews, the website text "presented a negative spin on New Sensor's acquisition of the SVETLANA mark." (Id.). "In addition to several misleading statements in the text" of the website, Matthews believed the following three

---

1. SED–SPb stands for "Svetlana Electron Devices—St. Petersburg."

statements were false: (1) "If you want the tubes that you've come to know in the past as 'Svetlana,' the only way to be sure you're getting that tube is to look for the ['Winged–C'] mark." Matthews believed that this statement was false because the foreign manufacturer of CE's tubes was not the only manufacturer of tubes previously marketed under the SVETLANA brand, see Matthews Decl. ¶ 8(1); (2) "Because of a change in ownership of the former American distributor, JSC Svetlana recently lost its ability to sell vacuum tubes bearing the 'Svetlana' name." Matthews believed that this statement was false because JSC's inability to use the SVETLANA mark in the United States resulted from New Sensor's purchase of the trademark and goodwill from SED and the settlement agreement, not a change in ownership of JSC, see id. ¶ 8(2); and (3) "The Xpo–Pul factory 'Svetlana' tubes are not the same Svetlana tubes that you have been accustomed to over the year!" Matthews believed that this statement was false "because it told the consumer that New Sensor's SVETLANA brand of vacuum tubes is different than the SVETLANA brand of vacuum tubes that had been sold by New Sensor's assignor, [SED], when in fact there always has been only one brand, which New Sensor now owns," see id. ¶ 8(3). Against this background, New Sensor believed that CE was attempting to trade on the good will associated with the SVETLANA mark "and that CE might have been selling SVETLANA-branded tubes not covered by the Alabama settlement." (Id. ¶ 9).

After reviewing CE's website, Matthews sent a letter to CE's President, Noreen Cravener ("Cravener"), in August 2003, in which he set forth his concerns. (Mat-

thews Decl. ¶ 10). Cravener refused to change the text of the website as requested and "did not offer any explanation for" her denial that CE had violated the Alabama settlement. (Id. ¶ 11). Moreover, CE refused to change its website to refer to JSC's factory by its correct name, SED–SPb. (Id. ¶ 12). Matthews also "believed that CE's repetitive use of the mark on the website would serve to weaken the strength of the SVETLANA mark in the marketplace." (Id.). Matthews subsequently directed his counsel to send a letter to CE setting forth its position, and in response, CE's counsel did not deny that PMA had sold tubes to CE after January 14, 2003. (Id. ¶ 13). This purportedly gave Matthews "further reason to believe that PMA's representations in the settlement agreement were untrue." (Id.).

Matthews therefore asserts that at the time the complaint was filed, New Sensor believed in good faith that "CE's statements on [its] website were untruthful, that CE's use of the SVETLANA mark was likely to cause confusion in the marketplace, and that PMA had sold SVETLANA-marked tubes to CE after January 14, 2003, thus invalidating the release of CE in the settlement agreement." (Matthews Decl. ¶ 14). Matthews claims that "the most critical of New Sensor's claims against CE concerned what [he] believed were the false statements on CE's website text." (Id. ¶ 15).

## DISCUSSION

■ CE seeks to recover attorney's fees under of the Lanham Act, which provides, in pertinent part, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).[2] The Second Circuit has

---

**2.** The term "exceptional cases" is not defined in the statute. The legislative history of the bill which became 15 U.S.C. § 1117(a) does not provide much meaning as to what constitutes an "exceptional case." See, e.g., S.Rep.

No. 93–1400, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7136 (Senate Report) (defendants will be allowed to recover fees in exceptional cases in order

held that the standard for the award of attorney's fees to a prevailing defendant is the same as to a prevailing plaintiff. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194–95 (2d Cir.1996) ("Nothing ... indicates that a different standard should apply for prevailing plaintiffs and prevailing defendants."). The prevailing party must make a showing of "fraud or bad faith" on the part of its opponent to obtain fees. *Conopco, Inc.*, 95 F.3d at 195. "Fraud" or "bad faith" can be established in different ways, including where "plaintiff brought suit in bad faith without an investigation of the merits of his claim"; "plaintiff's claims had no real substance"; or "plaintiff filed suit as a competitive ploy." *See, e.g.*, 17 PLI Trademark Law Prac. Guide § 17:3:6 (2004) (citations omitted). Courts in this judicial district have held that "bad faith" has been established where a party has met one or more of these prerequisites.

Plaintiff's pursuit of patently frivolous claims is circumstantial evidence of bad faith. *Compare IMAF, S.p.A. v. J.C. Penney Co., Inc.*, 810 F.Supp. 96, 100 (S.D.N.Y.1992) *with Yeshiva Univ. v. New Eng. Educ. Inst., Inc.*, 631 F.Supp. 146, 149 (S.D.N.Y.1986) ("there is no precedent for awarding defendants attorney's fees where the plaintiff's claim on the merits is not only advanced in good faith, but actually presented a close question for the jury"). Courts in this circuit have also held that bad faith may be found where a lawsuit is utilized for ulterior motives, including business advantage and inhibiting competition. *See, e.g., Mennen Co. v. Gillette Co.*, 565 F.Supp. 648, 657 (S.D.N.Y. 1983) (awarding attorney fees under § 35(a) where there was "a substantial overtone in this case to warrant an inference that this suit was initiated as a competitive ploy"), *aff'd*, 742 F.2d 1437 (2d Cir.1984). Finally, a case may be found to be "exceptional" for purposes of recovering attorney's fees where the defendant demonstrates that the plaintiff harbored a harassing purpose in instituting the action. *See Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 77 (2d Cir.) (awarding attorney's fees in part because plaintiff brought suit for coercive purpose of joining in defendants' profits), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *Diamond Supply Co. v. Prudential Paper Prods. Co.*, 589 F.Supp. 470, 476 (S.D.N.Y.1984) (attorney's fees awarded to a defendant because plaintiff's action was "patently baseless" and constituted "bad faith harassment").

In support of its motion, CE relies heavily on *Viola Sportswear, Inc. v. Mimun*, 574 F.Supp. 619 (E.D.N.Y.1983). In that case, plaintiff entered into an exclusive licensing agreement with defendants to manufacture and sell children's Sasson jeans. *Viola*, 574 F.Supp. at 619. Subsequent to this agreement, defendants sent one ten dollar pair of such jeans to a third-party as part of a group of production samples that were sold before plaintiff obtained the exclusive right to sell. *Id.* at 619–20. Plaintiff asserted that defendants' conduct ran afoul of the licensing agreement. *Id.* at 619. In finding that plaintiff's claims had no merit and were asserted in bad faith, this Court pointed to plaintiff's failure to investigate the facts prior to filing the complaint. The deposition of plaintiff's corporate president conclusively established that plaintiff had no concrete information upon which to base its lawsuit. *Id.* at 620. "He candidly admitted" in his deposition that he never reviewed the complaint before it was filed,

to "provide protection against unfounded suits brought ... for harassment and the

like"). .

he never possessed any evidence upon which a reasonable person might have formed the belief that the allegations in the complaint were accurate, he only knew of the single pair of jeans, and thus had no proof that defendants engaged in a nationwide conspiracy, and he acknowledged that the jeans in question may have been manufactured and sold prior to the execution of the exclusive licensing agreement. *Id.* Discovery further revealed that none of the defendants had manufactured, sold or offered plaintiff's jeans for sale after it obtained an exclusive license to manufacture and sell the jeans. *Id.* This Court noted the extensive litigation which followed, including discovery that revealed that plaintiff's claims were baseless. In awarding fees to the defendant, this Court held that the phrase "exceptional" would "surely be construed to encompass a case such as this which was without merit. One can only speculate about the motives which prompted this suit and in doing so none that are laudable come readily to mind."[3] *Id.* at 620. Therefore, plaintiff's claims could "hardly be said to be well grounded in fact" and could "appropriately be characterized as ... charge[s] that were frivolous and in support of which a good faith argument on the merits could not be made." *Id.* at 621.

While the facts in *Viola* are somewhat different from those here, the Court concludes that the result—the award of sanctions—should be the same. New Sensor argues that whereas in *Viola* the suit was brought because of a single pair of jeans, here much more was at issue–both as to its reputation as reflected in the trademark it owns, and financially. Plaintiff's argument is unpersuasive because other than merely asserting that its pre-complaint investigation uncovered facts supporting a good faith filing of the complaint, the Court concludes that as in *Viola*, New Sensor knew or should have known that its claims were not well grounded in fact and one can only speculate about the motives which prompted its suit and nothing laudable comes readily to mind.

First, New Sensor contends that it "reasonably concluded that CE's repeated use of 'Svetlana' in CE's website text" infringed upon its rights in its SVETLANA mark because "consumers in the United States associated the SVETLANA mark with [SED], from which New Sensor purchased all rights to the mark." (New Sensor Mem. at 15). However, other than stating that its conclusion in this regard was reached in "good faith," New Sensor has offered no evidence in support of its claim. For example, New Sensor has proffered no evidence that it conducted, or planned to conduct, a survey to establish consumer confusion and secondary meaning, a practice which courts in this circuit have endorsed for purposes of trial. *See, e.g., Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 124 (2d Cir.2001) ("The lack of survey evidence counts against finding actual confusion.") (citation and internal quotations omitted). Indeed, plaintiff's failure to proffer any evidence to support its allegation of confusion formed one of the bases for this Court's decision granting summary judgment to CE. *See New Sensor Corp.,* 303 F.Supp.2d at 315 ("there has not been a scintilla of evidence proffered by the Plaintiff to suggest that confusion has been sowed by the Defendant"); *id.* at 313 ("Plaintiff has provided no evidence of actual consumer confusion

**3.** Plaintiff further effectively admitted to its bad faith by its agreement to discontinue the lawsuit if "defendants agreed to release the plaintiff from any liability or sanctions to which the plaintiff might be exposed on account of the action it commenced," and its failure to oppose defendants' summary judgment motion. *Viola,* 574 F.Supp. at 620.

stemming from CE's use of SVETLANA on its website").

In addition, as noted in my prior decision, following the Alabama settlement agreement, "PMA sent a letter to its customers, *approved by New Sensor,* which informed them that tubes formerly branded SVETLANA would now be sold under the Winged–C logo." *New Sensor Corp.,* 303 F.Supp.2d at 307 (emphasis added). The text of that letter contains certain of the language on CE's website which plaintiff sought to challenge in this case as confusing. New Sensor has never proffered any explanation, let alone a reasonable one, for this glaring inconsistency in its position which further compels the Court's conclusion that plaintiff has not acted in good faith.

Second, New Sensor argues that it never received unambiguous representations from CE that it did not violate the settlement agreement which resolved the Alabama litigation. As discussed above, pursuant to that agreement, New Sensor released customers of PMA, including CE, from liability for the use of the SVETLANA mark in connection with the advertising of Svetlana-branded vacuum tubes purchased from PMA on or before March 3, 2003. (Settlement Agreement at 4). In a letter dated August 15, 2003, from CE's counsel to New Sensor's counsel, before the complaint was filed, CE very clearly stated that it "is selling the tubes purchased from [PMA] before March 4[, 2003] under the SVETLANA mark, as the settlement agreement provides, and is selling tubes purchased after that date under the "Winged–C" mark, also as the agreement provides." (Letter from David J. Bodney to Martin B. Pavane). What allegedly motivated New Sensor was CE's refusal to deny in that letter that it had purchased vacuum tubes from PMA between January 14, 2003 and March 4, 2003, which New Sen-

sor claimed it was not permitted to do because PMA represented in the Alabama settlement agreement that PMA sold no tubes to CE after January 13, 2003. (Settlement Agreement at 7). While it is true that CE never specifically denied that it had purchased tubes from CE during this time period, the Court finds that it is unreasonable for New Sensor to have predicated this lawsuit on CE's failure to deny an allegation in pre-litigation correspondence arising out of an agreement to which CE was not even a party. Since CE was not a party to the Alabama settlement agreement, it could not be sued for an alleged breach of that agreement, and thus it had no reason to specifically deny this allegation. *See generally Trustees of the Health and Welfare and the Pension Funds of the Four Joint Boards v. Schlesinger Bros., Inc.,* 931 F.Supp. 204, 208 (S.D.N.Y.1996) (nonparties and nonsignatories to collective bargaining agreement cannot enforce terms of agreement).

Further, New Sensor's alleged motivation turns the burden of proof on its head by requiring CE to prove that it is blameless rather than New Sensor discharging its burden of proving that it is not. In essence, unless CE fails to assert that it did nothing wrong, New Sensor would create the presumption that it did. As recognized by the Second Circuit, that is neither good logic nor good law. *New Sensor Corp.,* 121 Fed.Appx. at 409 ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial") (citation and internal quotation omitted).

To the extent that New Sensor was legitimately concerned that PMA had sold tubes to CE between January 14, 2003 and March 4, 2003, it could have inquired of PMA directly, with whom it amicably settled a lawsuit only months earlier. New

Sensor never made such an inquiry. Had New Sensor made such an inquiry, it would have learned that its "speculation" was unfounded. In support of its motion for summary judgment, CE submitted a declaration from PMA's President who "confirm[ed] that it did not sell any vacuum tubes bearing the SVETLANA mark after January 15, 2003." *New Sensor Corp.*, 303 F.Supp.2d at 310.

Moreover, in pre-litigation correspondence exchanged between the parties, CE specifically informed New Sensor that "if there are any remaining issues that [it] wishes to address," it should contact CE's attorneys. (Letter dated August 15, 2003 from David J. Bodney to Martin B. Pavane). New Sensor never availed itself of this opportunity. Therefore, New Sensor's claim that "CE's refusal to provide the information New Sensor requested ... gave rise to a legitimate suspicion that CE was not being truthful" rings hollow. (Pl. Mem. at 16).

Third, New Sensor argues that its false advertising claim was made in good faith because it reasonably concluded that at least three of the statements on CE's website were literally false. Regarding the first statement,[4] New Sensor points to the following portion of the Second Circuit's opinion to support its position that it had a good faith belief that the statement supported a false advertising claim:

> New Sensor maintains that the disputed statements are likely to deceive or confuse consumers into believing that tubes manufactured by JSC Svetlana are the only genuine 'Svetlana' tubes sold in the United States. As evidence, it offers an affidavit from former SED executives

stating that some 'Svetlana'—brand tubes sold in the United States were not manufactured by JSC Svetlana. The District Court properly found that this evidence, although it suggests that CE's statement *was not entirely accurate,* does not establish a genuine issue of material fact related to consumer confusion.

*New Sensor Corp.*, 121 Fed.Appx. at 409 (emphasis added). However, the Second Circuit held that the affidavit upon which plaintiff relied did not even constitute "some evidence of consumer confusion," let alone demonstrate that the subject statement was literally false. The fact that the statement may not have been "entirely accurate," provides no support for the argument that it was literally false as recognized by the Second Circuit itself. *Id.* ("The District Court also properly granted summary judgment to defendants on the ground that no genuine issue of material fact existed as to plaintiff's false advertising claim that the statements of CE's website were literally false"). Moreover, the affidavit which New Sensor submitted does not state that SVETLANA vacuum tubes which were being distributed in the United States were being manufactured by factories other than SED–SPb when this lawsuit was commenced. It only states that this occurred at some unspecified point in the past.

New Sensor's argument that it had a reasonable belief that the second statement was literally false fails on well-established legal grounds.[5] While plaintiff may be technically correct that JSC lost its ability to sell vacuum tubes bearing the Svetlana name due to a change in owner-

---

**4.** As discussed above, the statement was as follows: "If you want the tubes that you've come to know in the past as 'Svetlana,' the only way to be sure you're getting that tube is to look for the ['WingedC'] mark." (Pl. Mem. at 18).

**5.** The second statement was as follows: "Because of a change in ownership of the former American distributor, JSC Svetlana recently lost its ability to sell vacuum tubes bearing the 'Svetlana' name." (Pl. Mem. at 18).

ship of the SVETLANA mark and not due to a change in ownership of SED, this is a distinction without a difference and does not give rise to a colorable claim of false advertising under either federal or state law. *See National Basketball Assoc. v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir. 1997) (affirming dismissal of false advertising claim under the Lanham Act and stating that "[w]e agree with the district court that the statements in question are not material in the present factual context. The inaccuracy in the statements would not influence consumers at the present time"); *Karlin v. IVF America, Inc.,* 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 498, 712 N.E.2d 662, 665 (1999) (in order to state a claim under N.Y. Gen. Bus. L. § 350, the plaintiffs must prove that the advertising was "misleading in a material respect" and that it caused the plaintiffs' injury).

New Sensor's argument that it had a colorable basis for believing that a third statement from CE's website was literally false—New Sensor's vacuum tubes "are not the same as Svetlana tubes that you have been accustomed to over the years"— is belied by the absence of any evidence that it is. As noted in this Court's summary judgment decision, the statement was "literally true." *New Sensor Corp.,* 303 F.Supp.2d at 316.

In sum, my prior decision adequately explains the reasons for finding that plaintiff's false advertising claim was objectively unreasonable. As was stated there, New Sensor failed to "provide[] any evidence demonstrating a serious dispute regarding the truth of the statements on CE's website." *New Sensor Corp.,* 303 F.Supp.2d at 313.

Plaintiff's argument that sanctions should not issue because the Court based its decision on a case which neither party cited in its briefs, *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), lacks merit because, as the Second Circuit noted, "[t]he fact that 'CE in its moving papers never applied the *Polaroid* factors in its analysis of New Sensor's trademark infringement claim, and consequently neither did New Sensor,' is irrelevant." *New Sensor Corp.,* 121 Fed.Appx. at 408. In addition, in its brief filed in support of its summary judgment motion, CE relied heavily on *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072 (2d Cir. 1993), "a more recent case that applied the *Polaroid* factors." (Def. Reply Mem. at 20). It seems self-evident that "the court may always undertake an independent investigation to find the controlling law," and that the "fair administration of justice requires that the court be fully apprised of all relevant case law when resolving disputes" whether or not it is cited by the parties. *Central States, S.E. and S.W. Areas Pension Fund v. Profit–Sharing Plan of G & S Terminals, Inc.,* 1993 WL 735808, at *4 (N.D.Ill. Mar. 26, 1993).

Fourth, the Court finds that had plaintiff's request for relief pursuant to the Lanham Act been granted, it would have had the effect of preventing defendant from communicating about its products accurately. Thus, the complaint, at minimum, had an ulterior business motive. In its decision, this Court stated in relevant part as follows:

> SVETLANA, to the extent that it appears on the Defendant's website at all, does so not to confuse but to allay confusion. Indeed, it is fair to say, that to the extent it appears at all, it does so to protect consumers, not to confuse them. It accurately informs that consumers who may previously have had a preference for vacuum tubes made by the Svetlana factory in St. Petersburg, may continue to purchase those tubes but which now bear the Winged–C logo. It truthfully and accurately recounts the historical events which resulted in the

designation change. There is 'no such sanctity in the [name SVETLANA] as to prevent its being used to tell the truth. It is not taboo.' *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924) (Holmes, J.). It is difficult to see any other way in which the Defendant could have informed the public that the tubes now bearing the Winged–C logo were made in St. Petersburg in a factory that was historically known as the Svetlana factory.

*New Sensor Corp.*, 303 F.Supp.2d at 315.

Finally, plaintiff's suggestion that sanctions are not warranted because the Court dismissed its claims before the parties commenced discovery is baseless. In opposing defendant's summary judgment motion, plaintiff could have, but did not, submit an affidavit pursuant to Fed.R.Civ.P. 56(f) seeking discovery. That rules states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order is just."

◾ Regardless of the procedural posture of this Lanham Act case, the inquiry is whether this case is so "unreasonable" to warrant sanctions.[6] Plaintiff's trademark case, as recounted above, was initiated notwithstanding an insufficient factual support for the underlying claims, and the investigation that preceded the filing of the complaint should have led plaintiff to this realization. The ultimate objective of the suit was to further confuse, and not ameliorate confusion, since plaintiff sought through its requested relief to restrain truthful speech. These factors establish that this case was exceptional within the meaning of 15 U.S.C. § 1117 both because plaintiff's claim had no real substance and was initiated in bad faith and because the suit was designed to serve no laudable motive which comes to mind. Because the Court finds that sanctions are warranted under the Lanham Act,[7] it does not conduct an inquiry into the question whether sanctions are appropriate under 28 U.S.C. § 1927 or the inherent power of the Court.[8]

---

6. Plaintiff argues that defendant's failure to comply with Fed.R.Civ.P. 11(c)(1)(A), and demand in writing that New Sensor withdraw its complaint prior to seeking sanctions, precludes the Court from granting this motion. A leading commentator has stated, however, "When specific provisions of other rules or statutes are directly applicable to particular misconduct that is more generally covered by Rule 11, it is preferable to use the more specifically tailored provisions in determining whether to impose sanctions." 2 James Wm. Moore et al., Moore's Federal Practice ¶ 11.02[8] (3d ed.2004); *see also Motown Prods., Inc. v. Motown Record Corp.*, 849 F.2d 781, 786 (2d Cir.1988) ("[e]ach statutory or common law basis for imposing sanctions stands alone and should be examined separately: while the mechanisms may be congruent, they are not necessarily coextensive"). Because the Lanham Act does not contain a safe-harbor provision such as that found in Fed.R.Civ.P. 11, Plaintiff's argument is unavailing.

7. In an award of "reasonable attorney fees" pursuant to the Lanham Act, defendant is entitled to recover legal fees incurred in litigating the non-Lanham Act claims because "the Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on" them. John W. Crittenden & Eugene M. Pak, Monetary Relief Under Lanham Act Section 35, in Litigating Copyright, Trademark & Unfair Competition Cases for the Experienced Practitioner 1998, at 419 (PLI Pat., Copyrights, Trademarks and Literary Property Course Handbook Series No. 537, 1998).

8. The Court does not believe that defendant's other arguments why sanctions should issue in this case have merit, including the litigation conduct of plaintiff's attorneys following oral argument.

## CONCLUSION

For the foregoing reasons, defendant's motion for sanctions is granted. Defendant's counsel is directed to file an affidavit or declaration attaching itemized statements reflecting the reasonable attorney's fees sought in connection with their defense of this matter, with a proposed order, within ten days from receipt of this Memorandum and Order. *See New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983) ("the difficulties raised by the lack of contemporaneous records in this case convince us of the need to announce for the future that contemporaneous time records are a prerequisite for attorney's fees in this Circuit"). Plaintiff and its counsel shall be jointly and severally liable for the attorney fees.

SO ORDERED.